# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Midwest Operating Engineers Welfare Fund; Midwest Operating Engineers Pension Trust Fund; Midwest Operating Engineers Retirement Enhancement Fund; Operating Engineers Local 150 Apprenticeship Fund; Local 150 IUOE Vacation Savings Plan; Construction Industry Research and Service Trust Fund; and International Union of Operating Engineers, Local 150, AFL-CIO, <br><br> Plaintiffs, <br><br> v. <br><br> M2 Construction, Inc., a dissolved Illinois corporation; Calcon, Corp. a/k/a Calcon, Inc., a dissolved Illinois corporation; and Ramon Calderon, individually, <br><br> Defendants. | CIVIL ACTION <br><br> Case No. 23-CV-1227 |

## COMPLAINT

Plaintiffs, Midwest Operating Engineers Welfare Fund; Midwest Operating Engineers Pension Trust Fund; Midwest Operating Engineers Retirement Enhancement Fund; Operating Engineers Local 150 Apprenticeship Fund; Local 150 IUOE Vacation Savings Plan; (collectively "the Funds"); Construction Industry Research and Service Trust Fund ("CRF"); and International Union of Operating Engineers, Local 150, AFL-CIO (hereafter, "Local 150" or "the Union") bring this action to collect delinquent fringe benefit contributions and administrative dues and to enforce a breached payment plan from Defendants, M2 Construction, Inc. ("M2"), Calcon, Corp. a/k/a Calcon, Inc. ("Calcon"), and Ramon Calderon ("Calderon"), individually.

# COUNT I

## SUIT AGAINST M2 FOR DELINQUENT CONTRIBUTIONS

### Facts Common to All Counts

1. The Union is an "employee organization" under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(4); and a "labor organization" under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 152(5).

2. Defendant M2 was an "employer" within the meaning of ERISA, 29 U.S.C. § 1002(5) and an "employer" within the meaning of the LMRA, 29 U.S.C. § 152(2). It was a corporation engaged in the construction industry which was involuntarily dissolved in February 2022. M2 identified Ramon Calderon as registered agent with the Illinois Secretary of State (see Exhibit A attached hereto).

3. Defendant Calcon was an "employer" within the meaning of ERISA, 29 U.S.C. § 1002(5). It was a corporation engaged in the construction industry which was involuntarily dissolved in October 2014. Calcon identified Ramon Calderon as its president and registered agent with the Illinois Secretary of State (see Exhibit B attached hereto).

4. On September 1, 2008, Calcon, through its president Ramon "Ray" Calderon, signed two Memoranda of Agreements ("MOAs") (see Exhibits C and D attached hereto) with the Union that adopted the terms of collective bargaining agreements ("CBAs") between the Union and the Mid-America Regional Bargaining Association ("MARBA") commonly known as the Illinois Building Agreement, and the Excavators, Inc., Heavy and Highway and Underground Agreement (excerpts attached as Exhibit E and F, respectively).

5. On September 25, 2014, M2, through its owner Mildred Martinez, signed an MOA (attached as Exhibit G) with the Union that adopted the terms of the MARBA Illinois Building Agreement ("CBA") (Exhibit E).

6. The CBAs and the Agreements and Declarations of Trust incorporated therein require Defendants to make fringe benefit contributions to the Funds. The Funds are "employee benefit plans" and/or "plans" within the meaning of ERISA, 29 U.S.C. § 1002 (3).

7. The CBAs and Trust Agreements specifically require Calcon and M2 to:

(a) Submit a monthly report stating the names and number of hours worked by every person on whose behalf contributions are required and accompany these reports with payment of contributions based on an hourly rate identified in the CBA;

(b) Compensate the Funds for the additional administrative costs and burdens imposed by its delinquency through payment of liquidated damages in the amount of ten percent of untimely contributions, or twenty percent of such contributions should the Funds be required to file suit;

(c) Pay interest to compensate the Funds for the loss of investment income;

(d) Make its payroll books and records available to the Funds, including, but not limited to, federal and state tax returns, for the purpose of an audit to verify the accuracy of past reporting, and pay any and all costs incurred by the Funds in pursuit of an audit where a delinquency in the reporting or submission of contributions is identified;

(e) Pay the Funds' reasonable attorneys' fees and costs incurred in the prosecution of any action to collect outstanding reports, delinquent contributions, or compliance with an audit request;

(f) Furnish to the Funds a bond in an amount acceptable to the Funds.

8. The CBAs also require Calcon and M2 to make contributions to CRF. CRF is a "labor management committee" as that term is defined under Section 302(c)(9) of the LMRA, 29 U.S.C. § 186 (c)(9).

9. The CBAs place the same obligations on Calcon and M2 with respect to CRF as they do with the Funds.

10. The CBAs further require Calcon and M2 to deduct administrative dues and political action committee ("PAC") contributions, where applicable, from employees' wages and

remit those dues to the Union on a monthly basis utilizing a form remittance report. Where Defendants do not do so, the Union is entitled to liquidated damages, attorneys' fees and any other cost of collection.

11. Defendant M2 has become delinquent in the submission of its contributions due the Funds and CRF, and administrative dues and PAC contributions to the Union. As a result of this delinquency, it owes the Funds and CRF contributions, liquidated damages, interest, liquidated damages, attorneys' fees and any other cost of collection and owes the Union administrative dues, PAC contributions, liquidated damages, attorneys' fees and any other cost of collection.

### Jurisdiction and Venue

12. This Court has jurisdiction over this action pursuant to ERISA, 29 U.S.C. §§ 1132, 1145 and 28 U.S.C. § 1331, because ERISA is a federal statute.

13. Venue is proper in this Court pursuant to Section 502(e)(2) of ERISA because the Funds are administered in Cook County, Illinois.

### Allegations of Violations

14. ERISA states: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

15. Where an employer fails to submit contribution reports and contributions timely, ERISA permits the Funds to file suit under ERISA to collect the fringe benefit contributions, liquidated damages, interest, attorneys' fees and costs. 29 U.S.C. § 1132(g). ERISA also permits the Funds to seek an injunction that requires submission of outstanding reports so that the Funds may determine whether additional sums are due to the Funds. Alternatively, the Funds may seek an audit to establish whether such sums are due, and/or estimate the amounts due.

16. M2 has violated ERISA and breached the CBA and the Trust Agreements because it has failed to timely submit its contributions to the Funds and Local 150 and refused to pay liquidated damages and interest that has accrued.

17. Although the Funds have demanded that M2 submit its contributions to the Funds and pay liquidated damages and interest that has accrued, Defendant M2 has failed and refused to comply (Exhibit H attached hereto).

18. Upon careful review of all records maintained by the Funds, and after application of any and all partial payments made by M2, there is a total of $118,062.85 known to be due the Funds from M2, before the assessment of fees and costs, and subject to the possibility that additional contributions, liquidated damages, and interest will become due while this lawsuit is pending.

WHEREFORE, the Funds respectfully request that the Court:

A. Enter judgment in favor of the Funds and against M2 for all unpaid contributions as identified in M2's contribution reports;

B. Enjoin M2 to perform specifically its obligations to the Funds, including submission of the required reports and contributions due thereon to the Funds in a timely fashion as required by the plans and by ERISA;

C. Enjoin M2 at the Funds' option to submit to an audit of its payroll books and records, including, but not limited to, federal and state tax returns, in order to determine whether M2 owes additional sums to the Funds, and pay the costs of such an audit; or alternatively at the Funds' option require M2 to pay any contributions reasonably estimated to be due by the Funds for the period when M2 failed and refused to timely submit contribution reports;

D. Enter judgment against M2 and in favor of the Funds for liquidated damages, interest, attorneys' fees and costs associated with all delinquent contributions;

E. Provide the Funds with such further relief as may be deemed just and equitable by the Court, all at M2's cost.

## COUNT II

## SUIT AGAINST M2 TO COLLECT CRF CONTRIBUTIONS

1-9. CRF re-alleges and incorporates by reference paragraphs 1 through 9 of Count I as if fully stated herein.

### Jurisdiction and Venue

10. This Court has jurisdiction over this action pursuant to § 301 of the LMRA, 29 U.S.C. § 185 and 28 U.S.C. § 1331.

11. Venue is proper in this Court pursuant to 29 U.S.C. § 185(a) because this Court has jurisdiction over the parties, and CRF's principal office is located within the geographic jurisdiction of this Court.

### Allegations of Violations

12. M2 has failed to make timely payment of all contributions acknowledged to be due according to M2's own contribution reports and the collective bargaining agreement, and M2 has failed to pay interest and liquidated damages required by the CBA. Accordingly, M2 is in breach of its obligations to the CRF under the CBA.

13. Although CRF has demanded that M2 submit its contributions to CRF and pay liquidated damages and interest that has accrued, the Company has failed and refused to comply (Ex. H).

14. That upon careful review of all records maintained by CRF, and after application of any and all partial payments made by M2, there is a total of $2,764.06 known to be due to CRF from M2 subject to the possibility that additional contributions and liquidated damages will become due while this lawsuit is pending.

WHEREFORE, CRF respectfully requests that the Court:

A. Enter judgment in favor of CRF and against M2 for all unpaid contributions, liquidated damages, interest, CRF's reasonable attorneys' fees and costs;

B. Enjoin M2 to perform specifically its obligations to CRF including timely submission of reports and contributions as required by the plans and the CBA;

C. Award CRF such further relief as may be deemed just and equitable by the Court, all at M2's cost.

## COUNT III

### SUIT AGAINST M2 TO COLLECT UNION DUES AND POLITICAL ACTION COMMITTEE CONTRIBUTIONS

1-10. The Union re-alleges and incorporates herein by reference paragraphs 1 through 10 of Count I as if fully stated herein.

### Jurisdiction and Venue

11. This Court has jurisdiction over this action pursuant to § 301 of the LMRA, 29 U.S.C. § 185.

12. Venue is proper in this Court pursuant to 29 U.S.C. § 185(a) because the Court has jurisdiction over the parties and the Union's principal office is located within the geographic jurisdiction of this Court.

### Allegations of Violations

13. M2 has failed to make timely payment of all administrative dues and PAC contributions acknowledged to be due according to M2's own reports and the collective bargaining agreement. M2 is required to pay liquidated damages by the CBA. Accordingly, M2 is in breach of its obligations to the Union under the CBA.

14. Although the Union has demanded that M2 submit its administrative dues and PAC contributions to the Union and pay liquidated damages and interest that has accrued, the Company has failed and refused to comply (Ex. H).

15. That upon careful review of all records maintained by the Union, and after application of any and all partial payments made by M2, there is a total of $1,563.38 known to be due to the Union from M2 before the assessment of fees and costs subject to the possibility that additional contributions and liquidated damages will become due while this lawsuit is pending.

WHEREFORE, the Union respectfully requests that the Court:

A. Enter judgment in favor of the Union and against M2 for all unpaid dues, political action contributions, liquidated damages, the Union's reasonable attorneys' fees and costs, including any amounts estimated to be due because M2 failed to submit all dues reports required by the CBA;

B. Enjoin M2 to perform specifically its obligations to the Union including timely submission of reports and contributions as required by the plans and the CBA;

C. Award the Union such further relief as may be deemed just and equitable by the Court, all at M2's cost.

## COUNT IV

### SUIT TO ENFORCE PERSONAL GUARANTEE AGAINST RAMON CALDERON, INDIVIDUALLY, PURSUANT TO TERMS OF PAYMENT PLAN

1-10. The Funds, CRF and the Union re-allege and incorporate herein by reference paragraphs 1 through 10 of Count I as if fully stated herein.

11. Pursuant to a Judgment Order signed by Judge Marvin E. Aspen on July 2, 2015 in *Midwest Operating Engineers Welfare Fund, et al. v. Calcon Inc. a/k/a Calcon Corp.,* (15-cv-1991) (Dkt. #12), Calcon owes the Plaintiffs a total of $95,980.98 for delinquent fringe benefit contributions, liquidated damages, attorneys' fees and costs (see Exhibit I attached hereto).

12. Calcon is delinquent and M2 has become delinquent, and as a result of their delinquencies, Calcon and M2 owe the Funds and CRF contributions, liquidated damages, interest, attorneys' fees and costs, and administrative dues and political action committee contributions to the Union.

13. In order to forestall the filing of a default judgment and settle a previous case, *Midwest Operating Engineers Welfare Fund, et al. v. M2 Construction, Inc., et al.*, (22-cv-423), on or about May 5, 2022, Ramon Calderon, representing himself and as owner and president of M2 and Calcon, executed a Payment Plan Agreement ("Payment Plan") (see Exhibit J attached hereto).

14. In that Payment Plan, Defendants Calcon and M2, though Ramon Calderon, agreed to make installment payments of delinquent sums that they owed the Funds, CRF, and the Union. Pursuant to paragraph 2 of the Payment Plan, Ramon Calderon agreed to submit M2's forthcoming monthly reports and contribution payments timely (Ex. J, paragraph 2). Further, pursuant to paragraph 6 of the Payment Plan, Ramon Calderon agreed to accept personal liability for any amounts owed by M2 and Calcon, which at paragraph 12 of the Payment Plan he agreed are a single employer (Ex. J, paragraphs 6 and 12). Pursuant to paragraph 3 of the Payment Plan, Ramon Calderon consented to the entry of judgment against Calcon and M2, and himself, in the event of future contribution delinquencies (Ex. J, paragraph 3).

## Jurisdiction and Venue

15. This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367 because the claims against Ramon Calderon are part of the same controversy of delinquent contributions. This Court also has jurisdiction over this action pursuant to § 301 of the LMRA, 29 U.S.C. § 185, because the Payment Plan is an extension and modification of the CBA.

9

Additionally, Ramon Calderon executed the Payment Plan in Illinois and thus Ramon Calderon availed himself of the law of State of Illinois. Furthermore, Ramon Calderon stipulated to the jurisdiction of this Court in the Payment Plan (Ex. J, paragraph 4).

16. Venue is proper in this Court pursuant to 29 U.S.C. § 185(a) because the Court has jurisdiction over the parties.

## Allegations of Violations

17. Ramon Calderon has breached his obligations under the Payment Plan because he has failed to make timely payments of any additional contributions that have become due. Ramon Calderon has failed to pay liquidated damages and interest that has accrued. As a result of such breaches, the Funds, the Union, and CRF are entitled to the entry of judgment against Ramon Calderon for all sums that became due following the execution of the Payment Plan.

18. Although Plaintiffs have demanded that Ramon Calderon pay all amounts due pursuant to the Payment Plan (Ex. J) and that became due following the execution of the Payment Plan, Ramon Calderon has failed and refused to comply (Ex. H).

19. That upon careful review of all records maintained by the Funds CRF and the Union, there is a total of $122,390.29 due the Funds, the Union, and CRF from Ramon Calderon that have become due pursuant to the Payment Plan, before the assessment of attorneys' fees and costs subject to the possibility that additional contributions, dues, interest, and liquidated damages would become due while this lawsuit is pending, and/or the possibility that Ramon Calderon owes additional contributions and dues not yet identified by the Company in its delinquent reports.

WHEREFORE, the Funds, the Union, and CRF respectfully request that the Court:

A. Enter judgment in favor of the Funds, the Union, and CRF and against Ramon Calderon for all amounts that have become due pursuant to the Payment Plan; including all contributions, liquidated damages, reasonable attorneys' fees and costs;

B. Enjoin Ramon Calderon to perform specifically his obligations as required pursuant to the Payment Plan; and

C. Grant to the Funds, the Union, and CRF such further relief as may be deemed just and equitable by the Court, all at Ramon Calderon's cost.

Dated: February 28, 2023
Respectfully submitted,

By: s/ Steven A. Davidson
One of the Attorneys for the Plaintiffs

Attorney for the Funds and CRF:

Steven A. Davidson *(sdavidson@local150.org)*
Institute for Worker Welfare, P.C.
6140 Joliet Road
Countryside, IL 60525
Ph: (708) 579-6663
Fx: (708) 588-1647

Attorney for Local 150:

Steven A. Davidson *(sdavidson@local150.org)*
Local 150 Legal Dept.
6140 Joliet Road
Countryside, IL 60525
Ph: (708) 579-6663
Fx: (708) 588-1647